STELLA RIGGS v. NORFOLK-SOUTHERN RAILROAD COMPANY.

(Filed 15 October, 1924.)

**1. Evidence—Expert Witnesses—Opinion.**

The opinion of a physician, testifying in a personal injury case, as to the effect upon the plaintiff of an injury caused by the negligence of defendant, *is held,* upon the evidence in this case to have been properly received upon the trial.

**2. Carriers — Railroads — Negligence—Evidence—Questions for Jury—Trials.**

While a passenger upon a mixed train is required to use the proper degree of care attending upon travel of this character, it is also the duty of the carrier to exercise that degree of reasonable care incident to the increased risk to the passenger; and upon evidence tending to show that the conductor while helping a female passenger on such train with a baby at a regular station and assisting her to get to her seat on the car,

RIGGS v. R. R.

signalled the engineer to go ahead before the passenger could reach the seat, thereby causing her to be thrown againt the arm of a seat and injured, the question of the carrier's actionable negligence therein is one for the jury.

APPEAL by defendant from judgment rendered by *Daniels, J.,* at May Term, 1924, of PAMLICO.

The jury, upon proper issues, found that plaintiff was injured by the negligence of defendant, as alleged in the complaint; that she did not contribute to her injury by her own negligence, and that she is entitled to recover from defendant as damages the sum of $1,500.

From judgment rendered, defendant appealed. Errors assigned are based upon exceptions noted during the trial to evidence, and instructions of the court.

*D. L. Ward and F. C. Brinson for plaintiff, appellee.*
*Moore & Dunn for defendant, appellant.*

CONNOR, J. There is evidence in the case on appeal tending to show that plaintiff was injured while a passenger on defendant's train, after she had passed through the smoking car into the car provided for ladies; that before she was able to get into a seat she was thrown by a sudden and violent jerk of the train against the iron frame of a seat, and thus injured on her knee and foot. Her ankle and knee were swollen and enlarged a few days thereafter when she was examined by Dr. McCotter. The doctor, introduced by the plaintiff as a witness, had testified that he could not determine from his examination whether there was a fracture of a bone or not; that he suspected a fracture, and advised that an X-ray picture be taken.

Exceptions 1, 2, 3, and 4 are to the overruling by the court of defendant's objections to two questions addressed to this witness by the plaintiff, and the refusal of the court to strike out the witness' testimony following such questions. The doctor was asked, if the jury should find certain facts as stated in the questions, would he be able to form an opinion upon these facts satisfactory to himself as to whether or not there was a fracture, and, if not, whether he would be able to form an opinion as to the extent of the injury. He replied in the negative, and then proceeded to explain why he could not form such an opinion.

There was evidence from which the jury could find the facts to be as stated in the questions, and objections to these questions were properly overruled. *Parrish v. R. R.,* 146 N. C., 125. The witness having testified that he could not upon such facts form an opinion satisfactory to himself, explained to the court and jury why he could not do so. There was no error in the refusal of defendant's motion to strike out this testimony.

The fifth and sixth exceptions are to refusal of the court to enter judg-ment as of nonsuit at the close of the plaintiff's evidence and again at the close of all the evidence. The seventh exception was to refusal of the court to charge the jury as requested by the defendant that "if they believe all the evidence they will answer the first issue 'No.' "

There was evidence from which the jury could find that on 3 July, 1922, the plaintiff with two small children, one six months old and the other two years, went upon the defendant's train at West Alliance in Pamlico County; that the conductor assisted her in getting upon the train and knew that she had to pass through the smoking car in order to get into the passenger car in which seats were provided for ladies; that before she reached a seat in said car the train moved forward with a sudden and violent jerk, snatching her from her feet, and causing her to fall against the iron frame of the seat, thus injuring her knee and foot; and that soon after the injury the conductor came into the car and was informed by the plaintiff of the occurrence, and of her injury. The train was not in motion when she got on at the station. It started off quickly, after the conductor had signalled the engineer to go ahead. He followed plaintiff into the car, bringing her suit-case for her.

The conductor, the engineer and two male passengers testified that there was nothing unusual in the starting of the train—nothing more than usual in starting a mixed train. Both passengers, one a witness for the plaintiff, and the other for defendant, testified that plaintiff was thrown down and injured when the train started, before she had taken a seat in the car. The conductor also testified that when he went into the car the plaintiff told him that she was hurt, and that when the train arrived at her destination he assisted her to her sister's house and sent a physician to see her.

There was evidence that plaintiff was confined to her bed for fourteen days, and to her room for four weeks, and that at the time of the trial—nearly two years after she was injured—she suffered pains from her hip to her foot.

There was no error in the refusal of the court to nonsuit the plaintiff or in the refusal to give the instruction requested.

The plaintiff notified the conductor that she wished to get upon the train as a passenger. She had at this time in her arms a six months old baby and was leading by the hand a child of two years of age. The conductor took her suit-case and helped her to get upon the platform leading into the smoking car. He knew that she must pass through the smoking car into the passenger car in which seats were provided for ladies, and that she had two small children with her. The engineer testified that he stayed at the station until the conductor gave orders to go. It was clearly the duty of the conductor to give the passenger a reason-

able time within which to find a seat for herself and children and not to cause the train to be moved until she had such reasonable time. There was evidence from which the jury could find that there was a breach of duty in this respect and that her injury was caused by the failure of the conductor to give her reasonable time to get to a seat in the car. The case was properly submitted to the jury.

This case is easily distinguished from *Usery v. Watkins,* 152 N. C., 760, cited by defendant's counsel. In that case the plaintiff was a passenger, and was thrown down by the starting of the train. He was standing up in the car, near the door when the train stopped at a water tank, and continued standing until the train started. In this case plaintiff had gone upon the train at a regular station of the defendant, and was thrown against the arm of a seat by the sudden starting of the train, before she had taken a seat. The conductor knew that she had preceded him into the car with two small children. Whether or not he gave her a reasonable time to get into a seat before signalling engineer to start train was a question for the jury. There was evidence from which the jury could find, as they did under the instruction of the court, that he failed to give her such reasonable time.

While it is the duty of a passenger, on a mixed train—that is, one made up of both passenger and freight cars—with a full knowledge of the increased risks incidental thereto, to be correspondingly careful in guarding against injury by reason of the risks incidental to traveling upon such a train, it is no less the duty of the company carrying passengers on such a train to exercise every reasonable care and take every reasonable precaution against injury or danger to the life of such passengers, which the appliances for that mode of transportation will admit of. An act may be negligent or not, according to attendant circumstances. *Mitchell v. R. R.,* 176 N. C., 645.

We have examined defendant's exceptions Nos. 8, 9, 10, 11, and 12, and find no error in the instructions given or in the refusal to give instruction requested by defendant.

No error.