JEWEL RAY BRINSON by her next friend, ANNIE DENNIS BRINSON
v. TRAVIS DRYMAN MABRY.

(Filed 16 December, 1959.)

1. **Automobiles § 34—**

While a driver who sees or by the exercise of due care should see children on or near the traveled portion of the highway is under duty to use due care to control the speed of his vehicle and to keep a vigilant lookout to avoid injury, he is not required to come to a complete stop when children are standing off the hard surface and apparently attentive to traffic conditions and, he may not be held liable for injury to one of them who darts in front of his vehicle when there is nothing to give the driver notice that she might do so until too late for him to take evasive action.

2. **Automobiles § 41m—    Evidence held insufficient to show negligence on the part of motorist in hitting child on highway.**

The evidence tended to show that two children were standing on the west side of the highway off the hard surface where there was no marked crosswalk, that defendant knew that pedestrians, including children, crossed at the place, that as defendant, traveling north, approached the children two vehicles traveling south obstructed his vision, that immediately after these vehicles passed, plaintiff, a seven-year old child, ran into the highway to pick up some object therefrom, that while she was stooping over to do so her sister shouted a warning and she straightened up and ran on across the highway where she was struck at the eastern edge thereof. The physical evidence, including the fact that defendant's vehicle was stopped before the rear wheel had reached the child, disclosed that defendant was not traveling at an excessive speed and that defendant did not depart from his proper lane of travel. *Held:* The evidence is insufficient to be submitted to the jury on the issue of defendant's negligence.

APPEAL by plaintiff from *Johnston, J.,* May 11, 1959 Civil Term, STANLY Superior Court.

Civil action for damages on account of the personal injury alleged to have resulted from the defendant's actionable negligence.

The plaintiff's evidence disclosed the following: The plaintiff sustained an injury about eight o'clock on the morning of September 21, 1957. The accident occurred on U. S. Highway No. 52 near the village of Porter in Stanly County. Number 52 is a north and south highway. The surface is concrete, approximately 20 feet wide. A well marked center line divides the surface, the east lane for northbound and the west lane for south-bound traffic. At the site of the accident "a tar and gravel strip lay east of the cement portion of the highway, the width of which varied from nothing at each end . . . to a maximum width of about four feet. Immediately next to and ad-

joining this strip on the east was an apron driveway that led to a nearby grocery store-filling station. Shoulders flanked each side of the concrete, varying in width from approximately five feet to seven and one-half feet. . . . A church road entered the highway from the east approximately 150 feet north of the site of the collision. . . . A dirt road entered the highway from the west approximately two hundred feet north of the site of the collision." There were no highway signs on No. 52 indicating either of these intersecting roads. "A highway sign designating a roadway intersection was displayed on the east side of the highway approximately 600 feet south of the site of the collision. To the north . . . the highway was straight and practically level for several hundred yards. To the south the highway curved to the east, reaching the apex of the curve approximately 600 feet south. . . . At the moment of the collision the highway to the north was clear and free of oncoming traffic and the defendant's view in that direction was unobstructed for more than one-fourth mile, but immediately prior to the moment of the collision, the defendant had met two vehicles proceeding in the opposite direction (south) and by reason thereof, the defendant's view of the western edge of said highway was obstructed as the defendant rounded the curve in said highway. . . . At the time of the collision U. S. Highway No. 52 was a much traveled thoroughfare . . . the weather was clear and the highway was dry."

The defendant "left his home about two miles south of . . . Porter . . . driving his Ford pickup truck in a northerly direction on Highway No. 52; that when he approached the curve in the highway . . . he reduced the speed of his truck to approximately 40 miles per hour . . . that the defendant met two vehicles proceeding in the opposite direction, (south) ; that after meeting and passing the second of said vehicles, the defendant observed two children on the west shoulder of the highway . . ."

The quoted portions of the two preceding paragraphs appear in the defendant's answer. However, they were introduced in evidence by the plaintiff.

The plaintiff's evidence disclosed that the plaintiff, then seven, and her older sister, 10 or 11, had approached the highway from the west on a footpath, intending to cross to the church on the east. They stopped on the west shoulder of the road about two or three feet from the concrete surface. "A car came by going towards Norwood." (south) "Just before my sister was injured I looked in the direction of Norwood and Albemarle along the highway. I saw a white Ford coming from towards Albemarle and he had passed us before my sister was hit. . . . There was a piece of rubber lying in the road and

she wanted it, so she went out to get it, and she stooped over to pick it up and I hollered, 'Look out,' because his truck was coming and she took off across the road, and about the time she got to the edge of the road it hit her."

On cross-examination, she testified: "A car came by going towards Norwood. It was at the side of the road near where Jewel and I were standing. After the car came by Jewel ran out into the road to pick up a piece of rubber . . . When she stooped over to pick it up, I hollered, 'Look out,' . . . She took out across the road and just as she got to the right-hand side . . . the truck hit her. . . . The truck was over on its right-hand side of the road . . . After the car passed it would have been between me and the truck. The truck didn't run over Jewel. The wheel did but the whole truck didn't."

The medical testimony was to the effect that plaintiff, as a result of the accident, suffered a compound fracture of both bones in the lower right leg and "some abrasions over her face, forehead, and elbow. . . . The little girl had very good results. . . . She certainly seems to be all right."

At the close of plaintiff's evidence the court entered judgment of involuntary nonsuit, from which the plaintiff appealed.

*D. D. Smith, Morton & Williams for plaintiff, appellant.*
*Richard L. Brown, Jr., for defendant, appellee.*

HIGGINS, J. The only assignment of error presents for review the sufficiency of the evidence to survive the motion for nonsuit. In passing on this question we must evaluate the evidence in the light most favorable to the plaintiff. *Lake v. Express Co.,* 249 N.C. 410, 106 S.E. 2d 518; *McFalls v. Smith,* 249 N.C. 123, 105 S.E. 2d 297; *Simmons v. Rogers,* 247 N.C. 340, 100 S.E. 2d 849; *Chambers v. Edney,* 247 N.C. 165, 100 S.E. 2d 343.

We must take into account the fact that the plaintiff was a child seven years of age at the time of the accident. *Pavone v. Merion,* 242 N.C. 594, 89 S.E. 2d 108; *Sparks v. Willis,* 228 N.C. 25, 44 S.E. 2d 343. However, at the time defendant saw, or should have seen her, she was standing in a path on the west side of the highway about three feet from its surface, accompanied by an older sister, then 10 or 11. They were in a place of safety. The defendant admitted in his answer that he was acquainted with conditions on and near the scene of the accident. He knew that pedestrians, including children, on occasion crossed the highway from the west to the church and to the store and filling station on the east. The scene of the accident was in a 55-mile speed zone for vehicles of the type driven by the defendant.

The testimony fails to disclose, and the physical evidence tends to disprove speed. The sister of the plaintiff, the only eye-witness, said Jewel ran out to the center of the highway immediately behind the vehicle going south which cut off her view of the approaching pickup driven by the defendant. "You couldn't see until it got right at you." Necessarily, the passing car likewise cut off the view of the defendant until an instant before the contact. The defendant's vehicle skidded the wheels a distance the plaintiff's eye-witness measured by holding up her hands about three feet apart. One wheel only ran over the plaintiff before the vehicle stopped. At all times the defendant's vehicle was in his proper lane of traffic. The plaintiff's sister testified. "I don't know whether I heard any horn blow. I could just hear the wheels." Thus the evidence fails to show the defendant had time to sound his horn.

The evidence presents this picture: Two girls, one seven and the other 10 or 11, were standing in a path on the west side of the highway unmarked as a place for pedestrians to cross, though the defendant knew that children and grownups used it for that purpose. Assuming the defendant saw the girls, or should have seen them, they were standing by the highway in a place of safety, apparently waiting for the traffic to pass. Two cars were going south. The defendant was going north. As soon as the last vehicle passed going south, the little girl broke away from her sister, ran into the highway to pick up a mat near the center, but at the sister's warning she darted to the east or opposite side into the path of the defendant's pickup. The evidence indicates the forward movement of the vehicle stopped after one wheel only ran over her. The character of the injuries, a broken leg and abrasions of the face and elbow, though serious enough, lend support to the physical evidence the pickup was almost stopped at the time of contact. The record fails to disclose evidence of speed or departure from the proper lane of traffic, or to indicate the girls would not continue to wait until the vehicular traffic, including defendant's pickup, had passed.

True, the presence of children on or near the traveled portion of a highway whom a driver sees, or should see, places him under the duty to use due care to control the speed and movement of his vehicle and to keep a vigilant lookout to avoid injury. *Washington v. Davis,* 249 N.C. 65, 105 S.E. 2d 202; *Brunson v. Gainey,* 245 N.C. 152, 95 S.E. 2d 514; *Pope v. Patterson,* 243 N.C. 425, 90 S.E. 2d 706; *Barnes v. Caulbourne,* 240 N.C. 721, 83 S.E. 2d 898; *Hawkins v. Simpson,* 237 N.C. 155, 74 S.E. 2d 331; *Hughes v. Thayer,* 229 N.C. 773, 51 S.E. 2d 488.

Nevertheless, when a child, without warning, darts from behind

another vehicle into the path of a motorist who is observing the rules of the road with respect to speed, control, and traffic lanes, and who is maintaining a proper lookout, the resulting injury is not actionable. *Butler v. Allen*, 233 N.C. 484, 64 S.E. 2d 561; *Bass v. Hocutt*, 221 N.C. 218, 19 S.E. 2d 871; *Kennedy v. Lookadoo*, 203 N.C. 650, 166 S.E. 752. In such event the cause should not be submitted to the jury. *Mills v. Moore*, 219 N.C. 25, 12 S.E. 2d 661; *Fox v. Barlow*, 206 N.C. 66, 173 S.E. 43.

In this case the children were not on the traveled portion of the highway. They were apparently waiting for vehicular traffic to clear before attempting to cross. The defendant saw nothing to give notice to the contrary until the little girl darted out from behind another vehicle in front of him, leaving insufficient time to take evasive action. *Grant v. Royal*, 250 N.C. 366, 108 S.E. 2d 627; *Sparks v. Willis, supra.* Under the circumstances the defendant did all he was required to do, that is, to slow down and proceed with caution. Surely he was not required to stop completely so long as the girls remained off the hard surface and apparently attentive to traffic conditions.

Comparison of the facts in this case with those presented in *Butler v. Allen, supra,* declared by the Court to be a borderline case, will serve to illustrate wherein the facts now before us fail to make out a case for the jury.

For the reasons indicated, the judgment of compulsory nonsuit in the court below is

Affirmed.